UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN B.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　　　Defendant. | Case No. 19-cv-02437-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 20 |

Plaintiff John B. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382 *et seq.* [Docket Nos. 17 ("Pltf. Mot."), 22 ("Reply").] The Commissioner cross-moves to affirm. [Docket No. 20 ("Def. Mot.").] For the reasons stated below, the court denies Plaintiff's motion and grants the Commissioner's cross motion.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on February 11, 2015, alleging a disability onset date of February 1, 2009. Administrative Record ("A.R.") 200-08. Plaintiff's application was initially denied on May 19, 2015 and again on reconsideration on May 16, 2016. A.R. 87-96, 105-16. On July 14, 2016, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 138-40. ALJ E. Alis held a hearing on November 16, 2017 and a supplemental hearing on March 20, 2018. A.R. 28-86. After the hearings, the ALJ issued a decision finding Plaintiff not disabled. A.R. 12-27. The ALJ determined that Plaintiff has the following severe impairments: scoliosis and osteoarthritis of the cervical and thoracic spine. A.R. 17. The ALJ found that Plaintiff retains the following residual functional capacity (RFC):

[T]o perform a range of light work as defined in 20 CFR 416.967(b). He is

> able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk three hours in an eight-hour workday, and sit six hours in an eight-hour workday. He occasionally is able to climb, balance, stoop, kneel, crouch, or crawl. He frequently is able to reach in all directions, handle, finger, and feel bilaterally.

A.R. 18. Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform Plaintiff's past relevant work as a scanner operator, as well as other jobs existing in the economy (including counter clerk, field stenciler, and office helper), the ALJ concluded that Plaintiff is not disabled.

The Appeals Council denied Plaintiff's request for review on March 1, 2019. A.R. 1-6. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1.   At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2.   At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

1  impairments that is severe and meets the duration requirement, the ALJ will find that the claimant
2  is not disabled.

3        3.     At the third step, the ALJ also considers the medical severity of the claimant's
4  impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20
5  C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will
6  find that the claimant is disabled.

7        4.     At the fourth step, the ALJ considers an assessment of the claimant's residual
8  functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his
9  or her past relevant work, the ALJ will find that the claimant is not disabled.

10        5.     At the fifth and last step, the ALJ considers the assessment of the claimant's RFC
11  and age, education, and work experience to see if the claimant can make an adjustment to other
12  work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is
13  not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the
14  claimant is disabled.

15  20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its

1  judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112
2  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's
3  decision for harmless error, which exists when it is clear from the record that the ALJ's error was
4  inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035,
5  1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court has read and considered the entire medical record. For the purposes of brevity, the court cites only the facts that are relevant to its decision.

## IV.    ISSUES PRESENTED

Plaintiff argues that the ALJ erred in (1) weighing the medical opinions; (2) making a partially adverse credibility determination; (3) finding that Plaintiff can perform his past relevant work as a scanner operator; and (4) finding the Plaintiff can perform other jobs existing in the national economy.

## V.    DISCUSSION

### A.    Medical Opinions

#### 1.    Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*,

*Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Analysis

#### a. Ka Wai Tam, M.D.

On April 23, 2015, Dr. Tam performed a consultative medical evaluation. A.R. 295-301. Dr. Tam reviewed Plaintiff's medical and family history and reported activities of daily living. A.R. 295. On physical examination, Dr. Tam noted that Plaintiff could ambulate independently into the exam room and onto the exam table but "seem[ed] to move gingerly consistent with having chronic pains." A.R. 296. Plaintiff reported pain to percussion and had trouble sitting up from the supine

1  position. A.R. 297. Dr. Tam observed scoliosis with left rotation. A.R. 297. Plaintiff could perform
2  tandem and toe-heel gait, and his motor strength was 5/5 throughout. A.R. 296-97. Dr. Tam opined
3  that Plaintiff can stand and walk for up to 3 hours in an 8-hour workday; sit for up to 6 hours; lift
4  and carry up to 20 pounds occasionally and 10 pounds frequently; frequently reach, handle, finger,
5  and feel; and occasionally climb, balance, stoop, kneel, crouch, and crawl. A.R. 298. Dr. Tam also
6  wrote that Plaintiff has limitations with working at heights and around heavy machinery. A.R. 298.

7  The ALJ assigned great weight to Dr. Tam's opinion and, except for the environmental
8  limitations, incorporated the limitations assessed by Dr. Tam into the RFC finding. A.R. 20.
9  Plaintiff argues that the ALJ erred in characterizing Dr. Tam's opinion as allowing for a range of
10 light exertional level work. Pltf. Mot. at 7. He points out that Social Security Ruling ("SSR") 83-
11 10 defines "light" work to involve up to 6 hours of standing and walking in an 8-hour workday, but
12 Dr. Tam limited Plaintiff to only 3 hours of standing and walking. According to Plaintiff, the
13 limitations assessed by Dr. Tam and adopted by the ALJ limit him to less than light work, which
14 would render him incapable of performing the light exertional level jobs identified by the VE. Pltf.
15 Mot. at 7.

16 Plaintiff's argument is not convincing. Although light exertional level work can involve up
17 to 6 hours of standing and walking, the ALJ explicitly acknowledged Plaintiff's standing and
18 walking limitations in his RFC assessment. He also relied on the VE's testimony that a person with
19 Plaintiff's RFC could perform Plaintiff's past relevant work as a scanner operator as well as other
20 jobs existing in the economy, including counter clerk, mill stenciler, and office helper. A.R. 78-79.
21 Plaintiff does not argue that VE's testimony was inconsistent with the Dictionary of Occupational
22 Titles ("DOT") or that the ALJ erred in relying on that testimony. Thus, the ALJ's finding that
23 Plaintiff can perform light work as modified is not inconsistent with Plaintiff's standing and walking
24 limitations.

25 Accordingly, the court holds that the ALJ did not err in weighing Dr. Tam's opinion.

26           **b.**     **Sabiha Rasheed, M.D.**

27 Plaintiff's treating physician Dr. Rasheed submitted a medical source statement dated
28 November 6, 2014. A.R. 302-06. She diagnosed Plaintiff with fibromyalgia and osteoarthritis of

the cervical and thoracic spine. A.R. 303. She opined that Plaintiff can sit, stand, or walk less than 1 hour each in an 8-hour workday; must walk for 10-15 minutes every hour; must be allowed to shift positions at will from sitting standing, or walking; and would need to take unscheduled breaks during an 8-hour workday. A.R. 304-05. Dr. Rasheed wrote that Plaintiff can rarely lift less than 10 pounds; never lift more than 10 pounds; rarely look down, look up, or turn his head right or left; never hold his head in a static position; rarely climb ladders or stairs; and never twist, stoop, or bend. A.R. 306. She opined that he could handle, finger, and reach 20% of the workday with his right upper extremity and 30% of the workday with his left upper extremity. A.R. 306. According to Dr. Rasheed, Plaintiff's symptoms would frequently be severe enough to interfere with the attention and concentration necessary to perform even simple work tasks and he would likely miss work more than 4 days per month. A.R. 304, 306.

The ALJ assigned little weight to Dr. Rasheed's opinion because (1) the medical record contains no treatment notes from Dr. Rasheed to support her opinion and (2) the extreme functional limitations she assessed are inconsistent with Plaintiff's testimony that he does weight training and other exercises four to five times a week. A.R. 20. Plaintiff argues that the ALJ erred in assigning too little weight to Dr. Rasheed's opinion. Because Dr. Rasheed's opinion is contradicted by the other medical sources in the record, all of whom assessed less restrictive limitations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to discount her opinion. *Lester*, 81 F.3d at 830.

The ALJ discounted Dr. Rasheed's opinion on the basis that the medical record does not include any of her treatment records. Plaintiff represents that the ALJ refused to hold the record open for Dr. Rasheed's treatment notes and argues that the ALJ's "own failure to develop the record or allow development of the record is not a valid reason for the ALJ to discount Dr. Rasheed's opinion." Pltf. Mot. at 8. However, the record contradicts Plaintiff's account. A claimant "must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 416.1435(a). An ALJ "may decline to consider or obtain the

7

evidence" if it is not submitted by the stated deadline.[2] *Id.* At the hearing, Plaintiff's counsel admitted that he did not provide the required five days' notice that there was additional evidence. *See* A.R. 53. Further, the ALJ informed Plaintiff that he could electronically submit Dr. Rasheed's treatment records later and the ALJ would reconsider his decision at that time. A.R. 53. Plaintiff did not submit the records later, or with his request for review by the Appeals Council, or with his appeal to this court. He also has not represented that the records are available or forthcoming. Accordingly, the ALJ did not err in declining to consider additional evidence. Given the lack of evidentiary support for Dr. Rasheed's opinion, the ALJ did not err in assigning little weight to her medical source statement. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

The ALJ also discounted Dr. Rasheed's opinion on the basis that it is inconsistent with Plaintiff's reported activities of daily living. Plaintiff testified that he lifts weights about four times a week. A.R. 66. He can curl about 35 pounds, bench press 90 pounds, and deadlift 210 pounds. A.R. 66-67. He also does a warmup yoga routine four to five times a week and does a full 20-minute yoga course about twice a week. A.R. 67. Plaintiff goes skateboarding about once a week and does some jumps, although he noted that the jumping is limited. A.R. 65. He occasionally tries to complete ten minutes of alternating sprints and rests on a stationary bike. A.R. 69. Plaintiff's entire exercise regime lasts between 45 and 90 minutes, although he testified that there are "many days" he cannot make it through the full routine because of his pain and fatigue. A.R. 70-71. Plaintiff argues that his exercise activities are not inconsistent with the restrictive limitations assessed by Dr. Rasheed because "[t]here is no evidence that [Plaintiff] could sustain his exercise routine on a regular and continuing basis for 8-hours each day, 5 days per week, equivalent to full-time work." Pltf. Mot. at 8. This argument is not convincing. Among other very restrictive limitations, Dr. Rasheed opined that Plaintiff can never lift more than 10 pounds and can never twist, stoop, crouch, squat. A.R. 305-06. These limitations are clearly inconsistent with Plaintiff's testimony that he lifts

---

[2] In some circumstances, the ALJ must accept late-filed evidence. *See* 20 C.F.R. § 416.1435(b). Plaintiff does not argue that any of the listed circumstances apply here.

1  up to 210 pounds regularly and does exercises such as deadlifts that include crouching or squatting.
2  Thus, the ALJ properly discounted Dr. Rasheed's opinion as inconsistent with Plaintiff's reported
3  exercise activities.
4      In sum, the ALJ provided specific and legitimate reasons supported by substantial evidence
5  to discount Dr. Rasheed's opinion.

### B. Credibility

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence

of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ partially discredited Plaintiff's testimony on the basis that his reported limitations are inconsistent with his activities of daily living. A.R. 21. The ALJ noted Plaintiff's testimony that he is independent with respect to personal care and recently started driving short distances. A.R. 21. He also wrote that Plaintiff's exercise routine, as described above, is not entirely consistent with Plaintiff's allegations of disabling pain and fatigue. A.R. 21. In making a credibility determination, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, Plaintiff's ability to exercise regularly does not necessarily entail that he could maintain fulltime competitive employment, given that he also testified that his symptoms are intermittent and there are days when he "can't get out of bed." A.R. 58. However, the ALJ did not err in considering Plaintiff's activities of daily living as part of his credibility determination. For example, Plaintiff testified that while he can sustain heavy, regular exercise, he cannot stand at the sink long enough to wash dishes for 10 to 15 minutes. *See* A.R. 72 ("[M]enial tasks like that seem to deplete me more than lifting weights . . . ."). Plaintiff's testimony that he can engage in vigorous exercise on "good days" but is still precluded from household tasks reasonably casts doubt on his allegations of total disability. *See Romanelli v. Astrue*, 267 F. App'x 722, 724 (9th Cir. 2008) ("The ALJ reasonably concluded that [the claimant's] claimed limitation

of being unable to stand for more than fifteen minutes at a time was inconsistent with her testimony about her physical activities such as traveling around the United Kingdom for two weeks, engaging in Tae Bo, walking two to three times per week for thirty-five minutes at a time, taking day-long shopping trips, and gardening."). Therefore, Plaintiff's reported activities of daily living provided a clear and convincing reason for the ALJ to partially discredit his testimony.

The ALJ also cited the lack of objective medical evidence as a reason for his partial adverse credibility determination. A.R. 21. As pointed out by the ALJ, the medical evidence in this case is sparse. Aside from the medical opinions discussed above, there are 27 pages of treatment records, many of which concern conditions unrelated to Plaintiff's claimed impairments. *See* A.R. 292 (rectal bleeding, constipation), 308-313 (toe infections), 316 (ear infection). Other pages record medication prescriptions or lab results without evaluation of Plaintiff's underlying conditions. *See, e.g.* 324-30. Although some records mention Plaintiff's fibromyalgia symptoms, there are no physical examinations in the record other than Dr. Tam's consultative examination. The ALJ can properly rely on the lack of medical evidence in evaluating a claimant's testimony. *See* 20 C.F.R. § 416.929(a) ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ."). Accordingly, the sparsity of medical evidence supporting Plaintiff's allegations of disabling symptoms is a clear and convincing reason to partially discredit his testimony.

In sum, the ALJ did not err in making a partial adverse credibility determination.

### C.     Remaining Arguments

Plaintiff argues that the ALJ erred in his step four finding that Plaintiff can perform his past relevant work as a scanner operator and in his step five finding that Plaintiff can perform other jobs existing in the national economy, including counter clerk, field/mill stenciler, and office helper. For the most part, Plaintiff's arguments on these points are derivative of his arguments that the ALJ erred in weighing the medical opinions and in making a partially adverse credibility determination. Since the court rejects those arguments for the reasons explained above, they cannot serve as the basis for finding error at step four or five.

However, Plaintiff also argues that there are not a significant number of counter clerk or mill stenciler jobs in the national economy. At step five of the sequential evaluation process, "an ALJ must determine whether a disability claimant who cannot perform past relevant work is nevertheless capable of performing other work that exists in significant numbers in the national economy." *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017); *see* 20 C.F.R. § 404.1560(a). The Commissioner bears the burden of establishing that work exists in significant numbers. *Tackett*, 180 F.3d at 1099. Here, the ALJ found that Plaintiff could perform the job requirements of a counter clerk, mill stenciler, and office helper. The VE testified that, for the particular DOT codes for the counter clerk and mill stenciler occupations, there are 2,837 and 125 jobs nationally, respectively. A.R. 41. Plaintiff contends that these are not significant numbers. However, he does not dispute the VE's testimony that there are 75,000 office helper jobs nationally or argue that this number is not significant. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (holding that 25,000 jobs available nationally meets the statutory standard). An ALJ can meet his burden on step five by identifying just one occupation with a sufficient number of available positions. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one or more* occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." (emphasis added)); *see also Ojeda v. Saul*, No. 19-cv-02415-VKD, 2020 WL 5944434, at *4 (N.D. Cal. Oct. 7, 2020) ("The number of jobs considered is the collective total across all identified possible positions, not each position individually."); *Garner v. Saul*, 805 F. App'x 455, 459 (9th Cir. 2020) (finding that one job existing in significant numbers is sufficient in a step five finding). Since the ALJ identified at least one job that exists in significant numbers, he did not err in failing to address whether each position individually meets the statutory requirements.

Accordingly, the ALJ did not err in his step four or five analysis.

**VI.  CONCLUSION**

For the reasons stated above, the court denies Plaintiff's motion and grants the Commissioner's cross motion. The Clerk shall enter judgment for the Commissioner and against Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: December 22, 2020



_____
Judge Donna M. Ryu
United States Magistrate Judge

13